## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HAIDEH HEJAZI | * | |
| | * | |
| | * | |
| v. | * | Civil No. CCB-14-02974 |
| | * | |
| | * | |
| OLIVERI & ASSOCIATES, LLC | * | |
| | * | |
| | ******** | |

## MEMORANDUM

Haideh Hejazi and her husband Nassar Hejazi (collectively "plaintiffs") bring suit against Oliveri & Associates, LLC ("Oliveri") and Riva Trace Council, Inc., ("Riva") (collectively "defendants") for violations of the Fair Debt Collection Practices Act ("FDCPA") and various Maryland laws.   This suit was filed in the Circuit Court for Anne Arundel County on July 25, 2014.  The defendants timely filed a notice of removal to this court on September 19, 2014. Presently pending before this court are the defendants' motions to dismiss all counts.  (ECF Nos. 10, 11).

## BACKGROUND

Riva is the community association for a planned unit development in Anne Arundel County, Maryland.  (Complaint, ECF No. 2 at ¶ 10).  The plaintiffs own real property at 172 Cranes Crook Lane in Annapolis that is within the Riva community.  (*Id.* at ¶¶ 5, 11).  Oliveri is a law firm that does debt collection for Riva.  (*Id.* at ¶ 15).  Plaintiffs reside at another residence in Annapolis, Maryland on Moran Drive.  (*Id.* at ¶¶ 1, 2).  Their adult daughter, Sudi, resides at the property on Cranes Crook Lane.  (*Id.* at ¶ 6).

On August 26, 2013, an Oliveri employee, Michele May, spoke over the telephone with

Sudi. (*Id.* at ¶ 16). Plaintiffs allege that, after telephoning the Cranes Crook Lane residence, May did not verify Sudi's identity but spoke with her about past due assessments on the property. (*Id.* at ¶ 17). According to plaintiffs, Sudi is not an owner of the property and is not liable for assessments on the property. (*Id.*)

Plaintiffs allege that Sudi was misled by the conversation and believed she owed a debt to Oliveri. (*Id.* at ¶ 20). She made an offer to settle the debt and was advised by May to submit her proposal to Oliveri in writing. (*Id.* at ¶ 21). Sudi subsequently submitted a letter to Oliveri offering to settle the debt. (ECF No. 2-1). She stated in this letter that "I understand that several other letters were mailed out by your office addressed to my parents, who do not live at the residence on Cranes Crook Lane." *Id.* Sudi also indicated that she was "a single mother who is working full time and trying to stay ahead of my bills," who was in the "process of selling this house." *Id.* Plaintiffs allege that Sudi notified Oliveri on at least one other occasion that her parents did not reside at the property on Cranes Crooks lane. (ECF No. 2 at ¶ 23). According to plaintiffs, at this time, they were out of the country in Iran. (*Id.* at ¶ 24).

In October 2013 Riva, through Oliveri, filed a statement of lien with the Land Records of Anne Arundel County.[1] On December 3, 2013, Riva, through Oliveri, sent a Notice of Intent to Foreclose on the property to the Cranes Lane address. (ECF No. 2 at ¶¶ 27–29). The notice was addressed to Haideh and Nassar Hejazi. (*Id.* at ¶ 27.) On December 18, 2013, an employee of Oliveri named Timothy Larsen sent a letter to Haideh and Nassar at the address of their residence in Annapolis requesting the payment of the Hejazis' unpaid assessments. (*Id.* at ¶ 31). On January 15, 2014, Larsen sent a letter responding to Sudi's settlement letter. This letter was sent

---

[1] Plaintiffs state that this notice was filed in October 2014. (ECF No. 2 at ¶ 26). However, to be consistent with the timeline in their complaint, it only makes sense that the notice was filed in October 2013. This is confirmed by the actual notice itself (ECF No. 10-3 at p. 22) and Oliveri's motion. (ECF No. 10 at p. 3–4).

to Haideh and Nassar's address on Moran Drive.  (*Id.* at ¶ 32).

On March 18, 2014, Riva filed a notice of foreclosure action against plaintiffs in the Circuit Court for Anne Arundel County.  (*Id.* at ¶ 33).  The foreclosure action identified that the plaintiffs owed Riva $4,260.79 in principal and $16.30 in interest.  (*Id.* at ¶ 34).  While $670 of the principal is the past due assessments, a substantial amount is attorneys' fees for the collection.  (*Id.* at ¶ 35).

This lawsuit was filed by the Hejazis in Anne Arundel County Circuit Court on July 25, 2014.  (ECF No. 2).  Defendants filed a notice of removal to this court on September 19, 2014.  (ECF No. 1).  At the time this suit was filed, the foreclosure action was pending in Anne Arundel County Circuit Court.  *See Riva Trace Council Inc. v. Nassar Hejazi, et. al.*, Circuit Court for Anne Arundel County, Case No. 02-C-14-186167. The state court judge denied a motion to dismiss the foreclosure action at a hearing on August 10, 2014.  *See id.*  In February 2015, the state court foreclosure action was voluntarily dismissed.  *See id.*  Supplemental briefing indicates that the state court action was dismissed after the Hejazis paid the debt.  (ECF No. 30).

Haideh is seventy years old and Nassar is eighty years old.  (*Id.* at ¶¶ 36–37).  They allege that Olivieri and Riva's actions caused both of them to suffer severe anxiety that has had physical manifestations.  (*Id.* at ¶ 40).  Haideh's alleged issues include stomach problems and weight loss; Nassar alleges blood pressure problems.  (*Id.* at ¶¶ 41, 42).

The Hejazis' complaint contains eight counts.  The first two counts are plaintiffs' respective claims under the FDCPA against Oliveri.  The third and fourth are plaintiffs' respective claims under the Maryland Consumer Debt Collection Act ("MCDCA") against Oliveri.  The fifth and sixth are plaintiffs' respective claims for intentional infliction of emotional distress against Oliveri.  The seventh and eighth are for punitive damages against

Olivier.  The ninth is for punitive damages against Riva.  Defendants move to dismiss all counts.

## STANDARD

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir.2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  The plaintiff's obligation thus is to set forth sufficiently the "grounds of his entitlement to relief," offering "more than labels and conclusions." *Id.* (internal quotation marks and alterations omitted).  It is not sufficient that the well-pled facts create "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual yeamatter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court could draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## ANALYSIS

### I.     Debt Collection Practices Claims

The defendants argue three species of preclusion doctrine in support of their motion to dismiss plaintiffs' claims for debt collection practices under federal and state law.  The defendants most strenuously argue that the prohibition against a "collateral attack" on a judgment under Maryland law requires dismissal of the present action.  (ECF Nos. 10 at p. 5–7; 26 at p. 2–4).  In response to a request for supplemental briefing, the defendants also offer that "claim and issue preclusion principles . . . preclude the Hejazis from re-litigating any issue already decided in the Foreclosure action."  (ECF No. 30 at p. 4).

Collateral attack, which Maryland courts have distinguished from direct or collateral estoppel, was first defined as "an attempt to impeach the judgment by matters dehors the record, before a court other than the one in which it was rendered, in an action other than that in which it was rendered." *Klein v. Whitehead*, 40 Md. App. 1, 389 A.2d 374, 385 (1978).  In simpler terms, *Klein* stands for the proposition that a litigant may not attack a judgment in a prior proceeding with a new lawsuit.  The Maryland courts have since refined the doctrine of collateral attack, in line with their modification of other preclusion doctrines.  *Kris Jen Ltd. v. Fairfax Sav., F.S.B.*, 100 Md. App. 25, 639 A.2d 206, 211 (1994), *rev'd, Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship*, 338 Md. 1, 655 A.2d 1265 (1995) (citing *Rowland v. Harrison*, 320 Md. 223, 577 A.2d 51, 55–58 (1990).  Collateral attack now only prohibits a later action when "its successful prosecution in a subsequent action would nullify the judgment" in the first case.  *Id.*  Logically, a claim that would "nullify the judgment" in the original case is required to be asserted in that first proceeding.  *See id.* at 210–11. The Court of Appeals of Maryland cited this rule with approval, but reversed its application on appeal.  *See Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship*, 338 Md.

1, 655 A.2d 1265, 1270–71, 1279–80 (1995).

In arguing that "collateral attack" prohibits this suit, the defendants misunderstand the nature of the plaintiffs' debt collection claims under the FDCPA and the MCDCA.  The FDCPA provision the plaintiffs rely on prohibits, except in limited circumstances, a debt collector from communicating with "any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."  15 U.S.C. § 1692c (b).  The MCDCA provision prohibits a debt collector from "disclos[][ing] or threaten[ing] to disclose to a person other than the debtor or his spouse or, if the debtor is a minor, his parent, information which affects the debtor's reputation, whether or not for credit worthiness, with knowledge that the other person does not have a legitimate business need for the information."  Md. Code Ann., Com. Law § 14-202(5).

The reason defendants' "collateral attack" argument fails lies in the remedies these statutes provide.  Both impose civil liability on debt collectors who engage in the prohibited practices.  Under the FDCPA, a collector can be liable for "actual damage" sustained by the victim, additional damages up to $1,000, and the cost of bringing the action including attorney's fees. 15 U.S.C. § 1692k.  The MCDCA provides that "a collector who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury."  Md. Code Ann., Com. Law § 14-203.  Most significantly, neither statute provides that a collector who engages in unlawful practices eliminates the underlying debt by doing so—the debt is not invalidated by the collection practices.  Here, the plaintiffs still owe the debt; if in this action they prove unlawful practices were used by the collectors, they may be entitled to distinct

damages, not the alleviation of their original obligation.[2]  Because this action will not "nullify

the judgment" in the foreclosure action, the defendants' argument of "collateral attack" is

misplaced and must fail.

Nor do traditional claim or issue preclusion principles prohibit this action.  Under claim

preclusion, also called res judicata, "a judgment on the merits in a prior suit bars a second suit

involving the same parties or privies based on the same cause of action." *John Crane, Inc. v.*

*Puller*, 169 Md. App. 1, 899 A.2d 879, 892 (Md. 2006) (quoting *Parklane Hosiery Co. v. Shore*,

439 U.S. 322, 326 n.5 (1979)).  Under issue preclusion, where the parties are the same but the

cause of action is different, only factual issues actually litigated on the merits are precluded.

First, the causes of action are not the same.  In the foreclosure action, Riva was required

to prove that the Hejazis owed the sum Riva alleged they did, and that they complied with the

requirements of a foreclosure proceeding.  In this action, the Hejazis are required to prove that

the methods used to collect the debt, employed by Riva and Oliveri, were not in accordance with

state and federal law.  The evidence used for each case is therefore related but not identical.

The record in the state court case reflects this distinction.  In their motion to dismiss the

foreclosure action, the Hejazis relied upon portions of the Maryland Code to argue that the notice

used to effectuate the foreclosure was not appropriate and they were therefore not served.  *See*

(ECF No. 10-5) (citing Md. Code, Real Prop., § 7-105.1 (c)).  At the hearing on the motion to

dismiss, counsel for the Hejazis made the same arguments concerning notice, (*see* ECF No. 26-1

at p. 4–10) and asked that, pursuant to the Maryland Real Property Sales Rules, the action be

dismissed or postponed due to the lack of adequate notice.  *Id.* at 10. ("So that's what we're

---

[2] In fact, the Hejazis already paid the disputed debt to Riva and avoided foreclosure.  (ECF Nos. 30 at 1; 31 at 1).  The Hejazis' arguments in the supplemental briefing that suggest the debt was not valid (ECF No. 31 at 1–3) are misaligned with the claims in their complaint.  This court will not opine on the validity of the debt from the foreclosure action.

asking for, Your Honor, [under Rule 14-207.1(a)] that the action be dismissed, or in the alternative, that the Petitioners are given 30 days to either cure the deficiency, which would essentially restart the pre-foreclosure proceedings from the Notice of Intent to Foreclose, or that they get 30 days to show that the papers are legally sufficient.").  The evidence required for the case before this court relates to whether the method used to collect the debt, particularly communications with Sudi, were proper—not whether the defendants complied with the necessary notice requirements in a foreclosure action, nor whether the debt was owed. Accordingly, the claims are not the same and res judicata is inappropriate.  *See Green v. Ford Motor Credit Co*., 152 Md. App. 32, 828 A.2d 821, 838 (2003) (reaching the opposite conclusion "where the 'bad' collection practice complained about . . . would invalidate the debt").

Second, as to issue preclusion, the FDCPA and MCDCA claims were not "actually litigated" in the prior proceeding.  It is true that the FDCPA is mentioned in the Hejazis' motion to dismiss the foreclosure action (ECF No.10-4 at ¶ 4) ("A paralegal for plaintiff's counsel spoke with the aforementioned daughter about the alleged debts, in violation of the Fair Debt Collection Practices Act and admitted same in a correspondence to Sudi Hejazi, the daughter.") and at the hearing briefly (ECF No. 26-1 at pp. 4, 5, 12–13).  It appears, however, that the FDCPA claims were largely discussed in another context—the Hejazis also argued in their motion to dismiss that Oliveri should be stricken as counsel for Riva in the foreclosure proceeding.  *Id.* at p. 4.  ("And we're also asking the Oliveri and Associates' appearance be stricken from the case.  Respondents have filed in this Court, a lawsuit against Oliveri and Associates, as well as against the Petitioners for violations of the FDCPA.  So it's all kind of under the same Motion to Dismiss.").  The Hejazis had already filed this suit against Oliveri and Riva at the time of the hearing in the Circuit Court for Anne Arundel County, and it had not yet

been removed.  The Hejazis claimed that this created a substantial conflict that should have prevented Oliveri from serving as counsel to Riva Trace.  The judge ultimately declined this request.  *Id.* at 33.

At the hearing, there was one circumstance where the judge briefly opined on the Hejazis' FDCPA claim on the merits, rather than in the context of the motion to strike.  In the discussion of the notice requirements, the judge asked counsel for the Oliveris about Sudi (their adult daughter) and her behavior with respect to the property.  *Id.* at 11–12.  Counsel for the Hejazis mentioned that Sudi's involvement in the foreclosure proceedings did not "waive[] the FDCPA requirements."  *Id.* at 12.  The judge opined that "[b]ecause she was perpetrating a fraud . . . . that takes it out of the statute."  *Id.*

I decline to find that this statement by the judge was the "actual litigation" of the FDCPA claim.  In making the statements, counsel and the judge may have intended to reference the Maryland law surrounding foreclosure proceedings, which, unlike the FDCPA, might have affected the Hejazis' liability for the underlying debt.  These state law regulations on foreclosure notice were the focus of the majority of the hearing and the motion to dismiss filed by the Hejazis.  Importantly, the FDCPA claims were not brought in the foreclosure action—they were filed separately by the Hejazis in this suit, and, on the day of the hearing, were not actually before the judge.  Accordingly, the FDCPA claims were not "actually litigated" nor were the underlying facts actually determined or essential to the judgment and therefore are not precluded in this action.

## II.     Intentional Infliction of Emotional Distress Claims

The court will dismiss the intentional infliction of emotional distress claims.  The tort of intentional infliction of emotional distress is "rarely viable, and is to be used sparingly and only

for opprobrious behavior that includes truly outrageous conduct." *Snyder v. Phelps*, 580 F.3d

206, 231 (4th Cir. 2009) (Shedd, J., concurring) *aff'd,* 562 U.S. 443 (2011) (internal quotation

and citation omitted). "To succeed on a claim for intentional infliction of emotional distress in

Maryland, a plaintiff must demonstrate that the defendant intentionally or recklessly engaged in

extreme and outrageous conduct that caused the plaintiff to suffer severe emotional distress."

*Snyder v. Phelps,* 562 U.S. 443, 131 S.Ct. 1207, 1215 (2011) (citing *Harris v. Jones,* 281 Md.

560, 565–66, 380 A.2d 611, 614 (1977)).  The plaintiffs have failed to show that the defendants'

conduct rose to the level of "extreme or outrageous" or that they suffered "severe emotional

distress."  Accordingly, the intentional infliction of emotional distress claims will be dismissed.

## III.     Punitive Damages Claims

Plaintiffs also bring a claim for punitive damages.  In their complaint, these are pled as

independent counts.  In their reply to defendants' motion to dismiss, however, the plaintiffs

argue that the punitive damages claims are "not a separate cause of action but a prayer for relief."

(ECF No. 18 at p. 3).

"There is no separate cause of action for punitive damages apart from an underlying

cause of action upon which punitive damages can be grounded.  This is true both as a matter of

federal law . . . and state law."  *Biggs v. Eaglewood Mortgage, LLC*, 582 F. Supp. 2d 707, 711

n.5 (D. Md. 2008) (internal citations omitted).  The punitive damages claims therefore cannot

stand independently.  Further, punitive damages are not available for either of the debt collection

practices claims, *see* 15 U.S.C.  § 1692k; Md. Code Ann., Com. Law § 14-203, and the

intentional infliction of emotional distress claims will be dismissed.  Accordingly,  the claims for

punitive damages also will be dismissed.[3]

---

[3] In an apparent attempt to justify their claim for punitive damages the plaintiffs assert a claim

**CONCLUSION**

For the aforementioned reasons, defendants' motions to dismiss will be granted in part and denied in part.  The motions to dismiss the claims against both defendants for debt collection practices (counts I-IV) will be denied.  The motions to dismiss the remaining claims (for intentional infliction of emotional distress and punitive damages) will be granted.  A separate order follows.

_____May  27, 2015_____          _____/S/_____
Date                                                                       Catherine Blake
                                                                              United States District Judge

for "civil conspiracy" in their opposition, or, in the alternative, seek leave to amend to assert a claim for civil conspiracy.  (ECF No. 18 at p. 4).  Because plaintiffs have not proffered facts which would support a civil conspiracy, motion for leave to amend is denied.